## Ellen B. Reed et al., Appts., *v.* Lewis Staib.

In an equity action where the plaintiff has not proved the allegations of the bill, which are disputed by the verified answer, by two witnesses, nor by one witness and evidence of corroborating circumstances sufficient to supply the place of a second witness, *held*, that certain contradictions in defendant's testimony and the improbable character of the arrangement he testifies to, are not sufficient to deprive his answer of credit, the plaintiff's case not being free from similar defects and the defendant being supported by independent testimony.

*Held*, further, that a party who deals with a company as such cannot, under the circumstances of this case, deny its existence.

(Decided November 15, 1886.)

Argued October 28, 1886, before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. October Term, 1886, No. 85, W. D. Appeal from a decree of the Common Pleas No. 2 of Allegheny County dismissing a bill in equity for an accounting. Affirmed.

The matter was submitted to a master who reported, *inter alia,* as follows:

In March, 1870, Mrs. Nancy Baird, being the owner of certain

NOTE.—For the right to deny corporate existence in actions arising from transactions with the corporation, see note to Wentz v. Lowe, 2 Sad. Rep. 379.

coal lands in Washington county, Pennsylvania, leased the same to Lewis Staib, the defendant, for five years from March 1, 1870, and said Staib agreeing to mine at least 250,000 bushels of coal per annum at $\frac{5}{8}$ of a cent per bushel, and as much more as he pleased at the same price. But it was agreed that one fifth of the rent or royalty on the excess mined over the 250,000 bushels might be used by Staib in keeping the works in good repair, he keeping an account of such expenditures for the use of the lessor, and any part of said fifth not so used to be paid over to the lessor at the end of the term. The defendant, Staib, operated the coal works for some time under the lease, and then became bankrupt. In the meantime, in 1871, Mrs. Nancy Baird died. The plaintiffs herein are her heirs and devisees.

On October 17, 1874, T. H. Baird Patterson, Esq., as attorney for the executors of Mrs. Baird, forfeited the lease, for nonpayment of rent. This was done by arrangement with Staib. In November or December following a lease, dated October 1, 1874, for said coal works, was made by the executors of Mrs. Nancy Baird, deceased, to John Connor, the terms being the same as those of the lease to Staib, except that the duration of the lease was six months. Mr. Baird Patterson testifies that this lease was made at Staib's request and for his benefit, and that at the termination of the six months' lease the lease was continued verbally from time to time. Mr. Staib testifies that the lease was for the Harlem Coal Company, of which Connor was a member, and at its expiration was continued verbally for the Harlem Coal Company. The mine was operated from that time until April 1, 1882, under the management and control of the defendant, Staib, but whether on his own account or as the known agent of the Harlem Coal Company is the question at issue in this case.

The first inquiry which presents itself, on reading the bill, answer, and testimony herein, is whether the answer of defendant is responsive to the bill so as to require two witnesses, or one and corroborating circumstances such as are deemed the equivalent of another, to overturn it, or what part of it is so responsive. The bill charges that immediately after the forfeiture the executors replaced Staib in possession of the coal works with the understanding (*i. e.,* agreement) that the terms of the just forfeited lease should continue in force; that Staib remained in possession till 1882, and personally made payments on account

of the rent, but has failed to account with plaintiffs. Staib answers in paragraphs three and four that this is not true, but that the payments he made to plaintiffs and his whole connection with the premises after the forfeiture was as agent of the Harlem Coal Company, a partnership of which he was not a member (as suggested in the bill), and that of all this the plaintiffs had notice.

It seems to the master that according to the criteria stated in the opinion of the court in Eaton's Appeal, 66 Pa. 483, the first four paragraphs of the answer are responsive, except perhaps, the allegation of notice to the plaintiffs. If the facts are as Staib states, then he certainly would be giving only half the truth to merely say that he was not in possession and did not personally pay any rent to the plaintiffs.

It is claimed by the plaintiffs that the testimony of the defendant is so contradictory of itself and of the answer, and his story so improbable, as to deprive his answer of credit. The principal contradictions pointed out are these: Staib testifies that he did not know that the six months' lease was made to Connor till he saw it when it was offered in evidence in this proceeding, saying in explanation of his former testimony that the lease was made to McKee; that he had never seen it till after the suit was commenced, and then seeing it at Mr. Patterson's office and seeing McKee's name at the end of it, he thought it was made by McKee. However, in testifying to the circumstances of the making of this same lease he says that Mr. T. H. B. Patterson spoke of making a lease to Connor and taking Mr. McKee as security as he had property sufficient to secure it; and further on he says that he thought the lease was to be made to McKee, because he had property and because he bought the outfit to run the pit, etc.

As to the origination of the Harlem Coal Company, Staib testifies that Connor was the originator of it, and on another occasion that it was by Mr. Baird Patterson's advice—that he advised the formation of the company, that it was his idea in the first place.

As to when Mr. Baird Patterson first knew or heard of the Harlem Coal Company, it is claimed that Staib's testimony is contradictory, but it seems to the master to be only apparently so.

His remembrance as to whether he mentioned the Harlem Coal Company to Mr. Robert Patterson is quite materially dif-

ferent at different times. The other contradictions pointed out by the plaintiffs' counsel seem to be more apparent than real. It is contended that these contradictions, with some minor ones pointed out by the plaintiffs, are sufficient to deprive the defendant's testimony of credit, and to show that defendant's answer is not worthy of credit. The testimony refers to a time somewhat remote and was given at considerable intervals, and the contradictory parts of it do not concern any very vital point. The master is inclined to attribute them, as well as the self-contradictory testimony of one of the plaintiffs, who was the principal witness for the plaintiffs, on a more material point, to a natural failure of recollection as to transactions which occurred ten years before the time at which they were related by the witnesses, the testimony being given from time to time, at considerable intervals.

The only witnesses called by the plaintiffs were T. H. B. Patterson, Esq., and Mr. Robert Patterson, two of the plaintiffs, the defendant for cross-examination, and Mrs. Beazell, the latter on a minor point. The defendant produced as a witness W. J. McKee, and the deposition of Joseph Astin, and testified in his own behalf.

The transaction as detailed by either party presents some unusual features. According to the plaintiffs the Nancy Baird lease was forfeited, Staib consenting, and a lease for six months on the same terms was made in the name of John Connor, but in reality to Staib; this to prevent the interference of Staib's creditors, he having become bankrupt. The lease was renewed verbally, from time to time, after the six months. They knew of no Harlem Coal Company in connection with the land, till shortly before the bill was filed. Upon some checks and receipts being produced by defendant, which indicated a knowledge on their part that some Harlem Coal Company was interested in the works, the explanation was given that they supposed that was a name under which Staib was doing business.

The defendant's account of the matter is that Connor, McKee, and Astin, who were employed by Staib at and before the time of the forfeiture, as bookkeeper, storekeeper, and pit boss, respectively, formed a partnership to rent the works. The articles of copartnership are produced and proved. This partnership rented the works, the lease being made to Connor with McKee as bail, the lease not being to the company because the executors

wished to have a lease with bail. The company employed Staib as their general agent and attorney in fact, empowering him to transact all the business of the company, at a salary of $2,000 per annum, which was most or all of the time more than the profits. The partners continued to work for the company in the same capacities in which they had been employed before. Connor left the works within a couple of years of the making of the lease, and McKee and Astin left several years, at least, before 1882. Staib claims that he received instructions from them after they went away, but it was evidently very seldom. The proceeds, during at least all the later years, were not enough to pay Staib's salary.

There is no reason to doubt that a partnership was formed as alleged, but the bona fides of it is, to say the least, suspicious. It looks very much as if Staib were himself the Harlem Coal Company, and Connor, McKee, and Astin, the partners, mere figureheads as the plaintiffs allege. This, however, is but a suspicion. McKee, who would seem to be a disinterested partner, testifies strongly to the contrary. It is conceded that all the plaintiffs together make but one witness of the two necessary to overcome an answer. Campbell v. Patterson, 95 Pa. 448.

In fact there is really but one witness who testifies for the plaintiffs to the more material matters in dispute, and the force of his testimony is weakened by his forgetfulness, in regard to facts as to which the written evidence shows him to have been clearly mistaken. Aside from the suspicion above mentioned, there is nothing to supply the place of a second witness, and that is not sufficient to do so. A written lease to Connor being shown, the burden rests on the plaintiffs of showing clearly and convincingly that the writing does not mean what it says, and that it was not made for Connor's benefit, or for that of a partnership of which he was a member, but was really made for Staib, whose similar lease had just been forfeited by them. This they have not done. All the documentary evidence in the case is consistent with the truth of the defendant's statement. Although there is nothing in it which disproves the plaintiffs' case, or is necessarily inconsistent with their theory, yet some of it is not easily reconciled with their claim and some of the evidence produced by them.

The master is of opinion that the plaintiffs have not proved the disputed allegations of the bill by two-witnesses nor by one wit-

ness and evidence of corroborating circumstances, sufficient to supply the place of a second witness; that the contradictions pointed out in defendant's testimony, and the improbable character of the arrangement he testifies to, are not sufficient to deprive his answer of credit, the plaintiffs' case moreover not being free from similar defects, and the defendant being supported by independent testimony; and that they have not therefore shown a liability on the part of the defendant to account with them.

It is recommended therefore that the bill be dismissed with costs.

Plaintiffs, *inter alia,* filed the following exceptions to the master's report.

3. The master errs in not finding that the testimony of defendant is so contradictory as to deprive it of all weight, and to destroy all effect of the answer even if responsive.

5. The master errs in not finding that the formation and plan of the Harlem Coal Company—as testified to by defendant and his witness, *viz.:* by forming a company of Jos. Astin, the pit boss, previously in the employ of Lewis Staib, W. J. McKee, the storekeeper under Staib, and Jno. Connor, the bookkeeper under Staib, these parties putting in no capital, preserving respectively the same duties as under the former employment, and giving to Lewis Staib, their former employer, the full and exclusive power to manage the business, sign all checks, etc., at a salary which amounted to more than the profits of the concern—is fraudulent on its face, and a mere disguise for Lewis Staib, the defendant.

6. The master errs in not finding the account of the transactions given by defendant in his testimony so improbable as, in connection with the contradictions contained in it, to destroy its credibility.

On the hearing in the court below the exceptions were overruled and decree entered dismissing the bill and ordering costs to be paid by plaintiffs, who took this appeal, assigning as error the action of the court in overruling plaintiffs' third, fifth, and sixth exceptions to the report of the master; in dismissing the bill; and in er tering a decree accordingly.

*Thos. Patterson,* for appellants.—The court will examine the reasoning of the master and the testimony upon which he bases it in order to test its correctness.    Cake's Appeal, 16 W. N. C.

490; Hindman's Appeal, 85 Pa. 467; Phillips's Appeal, 68 Pa. 130; Burke's Appeal, 11 W. N. C. 501.

The court below should have carried out the conviction produced by the evidence and reversed the report. Baker v. Williamson, 4 Pa. 463; Spencer's Appeal, 80 Pa. 317.

*S. W. Cunningham* and *Isaac S. Van Voorhis,* for appellee.— In order to reverse the finding of a master on a question of fact it is not enough to show that this court, if sitting as a master, might have found differently; but it is necessary to show that the master and the court below either had no evidence to found their conclusion upon, or that the testimony was overwhelmingly in the plaintiff's favor. Kisor's Appeal, 62 Pa. 428; Burton's Appeal, 93 Pa. 214.

A suspicion cannot take the place of evidence. Burke's Appeal, 99 Pa. 350; Hartley's Appeal, 103 Pa. 23; Parker v. Phetteplace, 1 Wall. 684, 17 L. ed. 675.

PER CURIAM:

Independently of the effect of the answer in this case, which, as the master properly held, might of itself be regarded as conclusive of the controversy, there are two things which seem to us to settle this contention in favor of the appellee. They are: first, the existence of the Harlem Coal Company was conclusively established by the articles of copartnership; and second, it appears from the receipts and acceptances given in evidence that the appellants and their agent were not only aware of the operations of that company, but dealt with it as such. This being the case, it needs no argument to prove that the court below properly decided that the appellee could not be held for the default of that company.

The judgment is affirmed.